**In the Matter of DET HOLDINGS CORPORATION, et al.,**
**Debtors.**

**Bankruptcy Nos. 92–1073(HSB) through 92–1075(HSB).**

United States Bankruptcy Court, D. Delaware.

March 27, 1997.

Laura Davis Jones, Wilmington, DE, for debtor.

Thomas E. Ross, Philadelphia, PA, trustee.

*ORDER*

HELEN S. BALICK, Chief Judge.

AND NOW, March 27, 1997, upon consideration of the merits of the first omnibus objection to allowance of proofs of claim (docket no. 347), as that objection relates to the proof of claim of Mather Carroll McDuffie (# 314), the court finds and orders that:

1. Mather McDuffie filed a claim for $25,466.31. Docket no. 411. The debtors objected on the grounds that the claim should be classified as a general unsecured non-priority claim, and that the claim was not entitled to either administrative or priority status. That objection provided no caselaw in support of its position as to McDuffie's claim. An evidentiary hearing and oral argument was conducted on March 10, 1997. McDuffie represented himself.

2. Dominion Engineered Textiles produces tire fabrics and other fabrics used in various industrial applications. It maintains corporate headquarters in Columbia, South Carolina and operates production facilities in Georgia. In June 1955, McDuffie starting working for the company at its Thomaston, Georgia facility. Starting in 1990, the company was experiencing financial problems and hired professionals in attempts to restructure the company out-of-court. By 1992, it was clear to management that drastic measures, including a possible Chapter 11 filing, would need to be taken.

3. As one cost-cutting measure, the company started offering early retirement to certain employees. In June 1992, Max McCord, a personnel manager, called McDuffie into his office. McCord offered McDuffie early retirement on the condition that he retire effective June 30, 1992. At this time, McDuffie was 56 years old and held the position of a full foreman. The offer was on a take it or leave it basis. A request by McDuffie to work one more month was rejected. McDuffie accepted the offer and signed an election and release drafted by the company ("the contract"). Docket no. 411. Pursuant to the contract, McDuffie would be paid $28,788.00 as severance pay, in exchange for valuable consideration as discussed in the contract and as is discussed further in paragraphs seven and eight of this order.

4. At the time the contract was signed, the company knew it would be filing a bankruptcy petition. Indeed, McDuffie had just started receiving monthly payments pursuant to this contract and totaling only $3,321.16 when, on August 24, 1992, the company filed its Chapter 11 petition. McDuffie received no more payments, and the unpaid balance due under the contract is approximately equal to the amount of his claim, $25,466.31.[1]

5. The company takes the position that the unpaid balance is a general, unsecured claim. Under the confirmed first amended plan, such claims were impaired, and were paid approximately 10 cents on the dollar. Administrative claims, by contrast, were paid in full under the plan. McDuffie takes the position that his contract is an executory contract that was assumed by the company. If the contract was assumed, the company does not dispute that McDuffie is entitled to payment of his claim in full. *National Labor Relations Bd. v. Bildisco & Bildisco*, 465 U.S. 513, 531–32, 104 S.Ct. 1188, 1198–99, 79 L.Ed.2d 482 (1984).

6. The company never moved to assume or reject this contract. However, under the confirmed plan, all executory contracts not specifically rejected or assumed upon the date of confirmation were assumed by the company. Docket no. 219, Article VII, Paragraph 7.1. If the contract was executory, it was assumed by operation of the plan. Thus, as the parties agree, the key issue in this contested matter is whether McDuffie's contract was executory.

7. A contract is executory if, at the time of the petition date, "the obligation of both the [debtor] and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *E.g., In re Columbia Gas System*, 50 F.3d 233, 239 (3d Cir.1995)

[1]. The exact unpaid balance is $25,466.84; however it is not clear from the record why McDuffie slightly reduced his claim from this amount.

(citations omitted). It is not disputed that the company's obligation under the contract to make monthly severance payments to McDuffie is material. At the time of the petition date, McDuffie had unperformed and ongoing obligations to the company not to initiate any legal proceeding against the company for any claims he might have against the company. This is not disputed by the company. The company, however, does dispute that these obligations are material.

8. During closing argument, counsel for the company cited only two cases in support of its position on the materiality issue.

A. The first case is *In re Stewart Foods*, 64 F.3d 141 (4th Cir.1995). That case involved a retirement agreement whereby Stewart Foods provided the claimant Broecker with monthly cash payments. Pursuant to the agreement, Broecker had *no* continuing obligations to Stewart Foods, and the two parties *stipulated* that the contract was not executory. *Id.* at 146. The bankruptcy court *sua sponte* decided it knew better than the consensual reasoning of the debtor and the claimant, and held that the contract was executory. On appeal, the United States Court of Appeals for the Fourth Circuit properly reversed, holding that the retirement agreement was not executory. The *Stewart Foods* case does not support the debtors' position.

B. The second case the company cited is *In re Spectrum Information Tech.*, 190 B.R. 741 (Bankr.E.D.N.Y.1996). That case involved several employment and separation agreements. Each agreement entitled the respective former employee to pecuniary consideration in exchange for abiding by restrictive covenants that included confidentiality, non-interference, and non-compete clauses. The *Spectrum* court held that in each contract, the continuing obligations were not of the type that if breached by the employee, would necessarily allow the debtor to be excused from its obligation to pay the employee. *Id.* at 748, 749 (applying New York law).

C. The company's reliance upon *Spectrum* ignores the plain language of the McDuffie contract, which states that if he violates the release, he "must repay to the Company all severance benefits that [he has] received and give up the right to all other severance benefits, and pay all of the Company's attorney's fees and costs caused by [his] violation of this Release." Agreement at ¶ 2. This contract thus defines a breach by McDuffie of his ongoing obligation as a quintessential material breach that would excuse the performance of the company. Thus, the reasoning of the *Spectrum* case actually supports McDuffie.

9. The McDuffie contract was executory. It was assumed by operation of the plan.

10. For these reasons, and for the reasons stated in court, McDuffie's claim for payment on a dollar for dollar basis of $25,466.31 is **ALLOWED**.

11. If the claim has not yet been paid, it will be paid within three business days of the date of this order.